[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 11 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 13 
I find no difficulty in agreeing with the court below, in so much of its judgment as decides that insurers are liable where a loss of the subject insured has happened in consequence of any of the perils expressly insured against, though it should appear that the negligence of the master and mariners was the remote cause of the property being brought within that peril. Although the supreme court, at an early day, held a contrary doctrine in the case of Grim v. The Phenix Ins. Co. (13 John. 451,) it has not been followed by the federal courts or even in the courts of this state; and in the English courts there is now a settled course of adjudication the other way, and in conformity with the principle contended for by the plaintiffs. The most prominent of the cases, aside from those in this state, are referred to by Jewett, J. in Gates v. The Madison County Insurance Co. (1Seld. 478,) and need not be repeated. That case itself is a direct authority upon the point, and being the judgment of the highest appellate court in the state, is necessarily conclusive upon the question. It was an action upon an inland fire policy, and one of the grounds of defense relied upon was that the fire happened in consequence of the culpable negligence of the servants of the assured. It was held that this was not an answer to the action, and the decision was not placed upon the ground of any distinction between a marine and a fire *Page 15 
policy. It was said in the opinion of the court to be a rule well established, not only in the English but in the general American insurance law, that in the absence of fraud, the proximate cause of the loss, only, was to be looked to, and that the rule was equally applicable to marine and to fire insurance; and the greater number of the cases cited to prove the rule, were cases of insurance upon vessels. The negligence of servants in the case of a fire was considered as a cause of the loss remote from the fire which was the direct and immediate cause.
But although in a case where the vessel is brought within the peril mentioned in the policy by means of the negligence of the master and mariners, the insurers are nevertheless liable, it is not one of the terms of the contract that the insurers shall indemnify the assured against the delinquency of the servants and agents of the latter, and such is not, in general, construed to be its effect. The rule of law that the misfeasance and nonfeasance of a servant are imputable to the party whose servant he is, and in whose business he was at the time acting, holds in insurance cases as well as in other legal controversies, and a number of cases have been decided in accordance with that rule. Thus, where a vessel is injured by a peril of the sea, and further damages arise from a neglect of the master to cause her to be repaired, when that was practicable; where a vessel had been stranded which rendered her liable to be injured by worms, and such injury occurred in consequence of a neglect of her master to repair; where in the case of an insurance upon cargo, the ship was lost and the goods saved, but the master neglected to tranship them as he might have done, and thus have prevented a portion of the loss; where a neutral vessel was condemned for resisting an attempt to search; where loss occurred in consequence of the master exhibiting a false bill of health, or leaving the ship's register on shore; in all these cases the insurers were held to be discharged upon the principle which has been mentioned. (Copeland v. The N.E. Marine Ins. Co., 2Metc. 432; Haxard v. The Same, 1 Law R. 218;Schieffelin v. N.Y. Ins. Co., 9 John. 21; Amer. Ins. Co. v. *Page 16 Centre, 4 Wend. 45; S.C. 7 Cowen 564; McGaw v. OceanIns. Co., 23 Pick. 405; Cleveland v. Union Ins. Co., 8Mass. 308.) So far as the case of Grim v. The Phanix Ins.Co. holds that the underwriters are not generally liable for the misconduct of the master and crew, where there is no express stipulation to that effect, it is still an authority in this state. It is correctly said in that case that the master and mariners are not the agents and servants of the underwriters, so as to warrant the application of the general rules of law in such cases. The error into which the court fell was overlooking the consideration that the loss happened from one of the perils expressly mentioned in the policy, as its direct and proximate cause, and that where such is the case, the courts do not look further to ascertain what occasioned the happening of that cause of loss. The loss is within the very terms of the contract, and the rule of law which forbids further speculation as to the remote cause fixes the liability of the insurers. It should be kept steadily in mind that the underwriters do not undertake for the good conduct, skill, discretion or prudence of the master and crew, except in the case of an insurance against barratry, and that where they are held responsible for a loss happening on account of the failure of the exercise of those qualities on the part of those agents of the owner, it is in pursuance of the terms of the contract, which as construed by the courts, renders them liable for a loss from a peril insured against, whatever may have been the cause which occasioned the ship to encounter that peril. Suppose a class of sea risks to be excepted from the policy: should the vessel be lost by encountering one of these risks, no one would consider the insurers liable, though it should be shown that the carelessness of the master was the sole efficient and procuring cause; and this consideration demonstrates that the underwriters do not contract for the care and skill of the crew, as a distinct hazard from which accidents may be expected. Such a contract if made, in terms, would be opposed to sound policy, as tending to encourage a relaxation of that degree of attention and vigilance so necessary at sea, and which *Page 17 
might be expected to follow from a knowledge on the part of the master and mariners, that their immediate employers would be protected against the consequences of their inattention. It was this consideration which led Lord Mansfield, in passing upon a case where barratry was insured against, to express his surprise that such a hazard should ever have been inserted in contracts of insurance — and still more that it should have continued in them so long; for thereby, he said, "the underwriter insures the conduct of the captain (whom he does not appoint and cannot dismiss,) to the owner who can do either." (1 Term Rep. 330.)
In applying these principles to the case under review, the inquiry presents itself as to the cause of the loss which the plaintiffs have sustained. We find in the first place that the district court of the United States adjudged that a lien for a sum of money attached to the plaintiffs' steamer, and ordered her to be sold unless it should be paid, and that the plaintiffs were obliged to pay it to redeem their vessel. This was in one sense the cause of the loss; but the judgment of a court proceeding according to the law of the land cannot legally be considered a peril of any kind. Again, the judgment was for a cause of action which accrued on account of a collision with the propeller, which was insured by the defendants, and collisions are classed among sea risks; but the fact that the barque was injured by the collision was not of itself the ground of the judgment. If the crew of the barque had been alone in fault, or if it had been the result of accident without blame on either side, no judgment could have passed in the district court against the propeller. It would have been damnum sine injuria, out of which no cause of prosecution could have arisen against the insured vessel. It was the negligence of the master and crew which furnished the basis of the proceeding and the aliment for the judgment. Without that feature the collision, and the injury to the barque would have been harmless as it regards the propeller, whatever damage the barque might have suffered. It was that feature alone which shifted the misfortune from the owners of the *Page 18 
barque, with which the defendants had nothing to do, to the owners of the propeller which they had insured. All this is very different where the insured vessel is itself injured by a collision or other marine accident, resulting from the negligence of her own crew. The damage is the direct and immediate consequence of the collision, and it arises equally whether the crew had been vigilant or careless. The assured has only to prove the collision and the damage and his case is made out, and the defendants cannot shield themselves by going back to the cause of the collision. But in a case like the present, where the insured vessel sustained no damage by the contact, proof of the collision and of damage to another vessel shows nothing which will sustain an action. The plaintiff must go further and establish the fault of his own servants, and that such fault has been productive of a lien, obtained through proceedings in rem in the admiralty courts. I think therefore that the reasoning concerning remote and proximate causes of loss and damage is inapplicable to this case; for I regard the negligence of the plaintiffs' servants as the sole efficient cause of the loss which he has sustained. The winds, the waves and the collision are instrumentalities through which the wrong of the crew became fruitful in a loss to the vessel which they had in charge. They do not, I think, stand in the relation of cause and effect. Suppose a building insured by a fire policy to be set on fire and consumed by the negligent conduct of the servants of the assured. The insurers we have seen are nevertheless liable. Now suppose an adjoining building not insured has taken fire from the insured one and is also burned down. Although the master of these servants would be liable to the owner of the uninsured property, who might have a recovery against him for the damage, yet no one would pretend that the former could recover such loss against the insurers. The case I admit would lack one feature which exists in this case, the lien upon the property insured, still it exemplifies the incongruity of enabling one to sustain an action founded upon the wrong of persons for whose conduct he is responsible.
I think, moreover, that the point has been settled upon *Page 19 
authority to which we ought to defer. The question has never arisen in the courts of this state. When this case was decided by the supreme court, there was a precedent in favor of the plaintiffs in the circuit court of the United States. (Hale v.The Washington Ins. Co., 2 Story's R. 176.) Pending this appeal, a case in all its features like the one under review was determined in the supreme court of the United States adversely to the plaintiffs. (General Mutual Ins. Co. v. Sherwood, 14How. 351.) In the able opinion delivered by Mr. Justice Curtis, and which would appear from the report to have been the unanimous opinion of the court, the case before Judge Story was overruled, and the doctrine was established that the negligence of the master and crew in such a case was the sole efficient cause of the loss, and that the insurers were not responsible. It was also held that the case of Peters v. The Warren Ins. Co., (14Pet. 99,) was inapplicable. In that case the insurers were held liable for a loss happening to a vessel not insured, by a collision with the one upon which the defendants were underwriters. But the collision was accidental, and the loss was visited upon the insured vessel and her owners by the peculiar laws of a foreign country within whose jurisdiction the accident happened. The decision was diametrically opposed to a judgment of the K.B. in a precisely similar case. (De Vaux v. Salvador, 4Ad. El. 420; 31 Eng. Com. Law, 104.) We are not called upon to pronounce upon these conflicting decisions. It is sufficient to say that if the case in 14th Peters sustains the judgment under review, and so far as it sustains it, it is overruled by the subsequent decision of the same court just referred to. There are strong reasons why we ought to follow the supreme court of the United States in this case. In a large class of cases it has concurrent jurisdiction upon questions of insurance with the appellate courts of all the states, and it is of great importance that the decisions upon such questions should be uniform. From the commercial and financial prominence of the city of New-York, it is to be expected that many such controversies will have their origin there in which citizens of other states will be interested parties, and *Page 20 
it would be unfortunate if a different rule prevailed in our tribunals from the one which obtains in the federal courts. It is only necessary to add that the opinion delivered by Mr. Justice Curtis appears to be sustained by the continental writers on the law of marine insurance, as will be seen by examining the treatises to which he has referred, and as will also be seen by a reference to the opinion of Judge Story in the case of Hale v.The Washington Insurance Company.
I am of opinion that the judgment of the supreme court should be reversed, and that judgment should be given for the defendants.