ADELE BRIOSO *v.* PACIFIC MUTUAL INS. CO.

As a general rule, a court of equity will only interfere to correct a mistake in a written instrument, where it has been mutual, and does not embody the terms, as fully understood by *both* parties. But this rule does not prevail, either where the party against whom the relief is sought has acted in bad faith or disingenuously, with full apprehension that the instrument did not express what the other party desired or intended, or where confidence was reposed in him, and he was entrusted with and assumed the preparation of the instrument, but has, in its preparation, either wilfully or negligently, omitted what had been clearly stated to him as the intention of the other party, who, relying on its correctness, and without particular examination of the document so prepared, incautiously assents to it, under the supposition that it conforms to the verbal terms of the negotiation, as previously agreed upon.

Plaintiff being insured with defendants by a maritime policy providing that "no shipment was to be considered insured until approved and indorsed on the policy by the company," received advices of a shipment for his account, and took the letter of advice, together with the invoice and bill of lading, to defendants, to have the shipment entered on the policy, and for that purpose left them with defendants' president. The latter made an indorsement on the policy, but not according to the bill of lading, writing " eight boxes of indigo," instead of " 18 boxes," and omitting to state that the vessel having the goods on board was to proceed from La Union to Panama "*via* Realejo." Plaintiff did not see the indorsement on the policy until after the loss occurred, and then discovered, for the first time, that it was not according to the bill of lading.

Brioso v. Pacific Mutual Ins. Co.

*Held,* that the policy would be reformed so as to make the indorsement correspond with bill of lading.

'The owner of goods insured on board a vessel at sea, is not liable (at least, where the barratry of the master and mariners is insured against) for the act of the captain in putting to sea, from an intermediate port, in an unseaworthy condition.

APPEAL by defendants from a decree ordering the reforming of a policy of insurance, and also from a judgment for the amount due the plaintiff under said policy, as reformed.

*John McDonald,* for appellants.

*Pritchard, Choate & Smith,* for respondent.

BY THE COURT.*—ROBINSON, J.—The judge before whom the question as to the reformation of the contract of insurance was tried without a jury, was fully warranted by the testimony in making a decree to that effect. The insurance, in respect to which such relief was asked, was an open policy of marine insurance upon a shipment of indigo from La Union (San Salvador, C. A.), to New York; the plaintiff was insured from "barratry of the master and mariners, and all other perils, losses and misfortunes, that have or shall come, to the hurt, detriment or damage of the said goods and merchandise or any part thereof," and it was provided, that "no shipment was to be considered insured until approved and indorsed on the policy by the company." The policy, as frequently occurs, remained with the company, and the application made to this court was to reform the indorsement on it of a risk taken under it of this shipment of indigo, by inserting the words and figures, "18 boxes of indigo," instead of "8 boxes of indigo," and the words, "*via* Realejo," before the word, "Panama," in the indorsement on the policy of the risk in question, which, as entered thereon, was in these terms: "(date) 1860, Feb. 28; (from) La Union; (to) Panama; (amount insured) $3,500; (rate) 4¼; (remarks) 8 boxes of indigo."

On this question Mr. Meyer, agent for plaintiff, swore, that

---

* Present, ROBINSON, LARREMORE and J. F. DALY, JJ.

he applied for the insurance on this shipment on her behalf, and on making the application he exhibited to Mr. Edwards, the president of defendants' company, and who acted for them in the transaction, his letter of advice, requesting the effecting of such insurance, and left with him the letter, bill of lading and invoice for the particulars, in which it was stated that the voyage was to be "*via* Realejo" (Nicaragua). It appears, that Mr. Edwards thereupon wrote out a memorandum as an application for the insurance, unsigned by plaintiff or her agent, for "$3,500, on 18 boxes of indigo," per sch. Dos Hermanos, "from La Union to New York *via* Panama, and thence by railroad to Aspinwall, and from Aspinwall by Panama line vessels," with some other particulars (as to provisions by way of warranty) not affecting this question. The defendants agreed to make the insurance, and an entry on the policy was shortly afterwards made, by some officer of the company, in the words and figures first above quoted.

Neither plaintiff nor her agent ever read this memorandum of application, made by the president, nor saw the entry on the policy until after the loss. The vessel, with this shipment of indigo, was lost at sea on the voyage. On application being made for the insurance money, no objection was made by defendants of any wrongful description of the voyage, or any departure by reason of the vessel going into Realejo or Golfo Dolce, or any neglect to have her repaired before leaving either of those ports, but the general objection was made that she was unseaworthy. Mr. Edwards, the president, testifies that Mr. Meyer, on making the application, did not state the name of the vessel by which the shipment was made, but said "he did not know its name." He (Edwards) had no recollection that the bill of lading was shown him; that "*the application was made binding without the name of the vessel, and without stating the description of the merchandise.*" Under the testimony offered, and especially in the want of recollection and uncertainty of defendants' witness as to the delivery to him of the bill of lading, *for the purpose* of a correct description of the voyage and shipment, or of the source from which he obtained the particulars which he noted; the evident mistake made by

Brioso v. Pacific Mutual Ins. Co.

defendants in stating the shipment to be " 8 boxes of indigo," instead of (as subsequently corrected) " 18 boxes," and the positive and uncontradicted statement of plaintiff's witness, that the letter of advice, bill of lading and invoice were exhibited to the president, on the application and for the purposes of the insurance, furnished satisfactory evidence to overcome the merely formal denial of the answer, and a proper basis for reforming the contract in the precise terms of the application in the particulars which, *by the neglect of defendants' officers*, they failed to notice and incorporate into their indorsement of the shipment on the policy.

It is true, that, as a general rule, a court of equity will only interfere to correct a mistake in a written instrument, where it has been mutual, and does not embody the terms as fully understood by *both* parties; but this rule does not prevail, either where the party against whom the relief is sought has acted in bad faith, or disingenuously, with full apprehension that the instrument did not express what the other party desired or intended; or, where confidence was reposed in him, and he was entrusted with and assumed the preparation of the instrument, but has, in its preparation, either wilfully or negligently omitted what had been clearly stated to him as the intention of the other party, who, relying on its correctness, and without particular examination of the document, so prepared, incautiously assents to it, under the supposition that it conforms to the verbal terms of the negotiation, as previously agreed upon. This transaction took place informally and in the haste of business, and, as well remarked by Judge Brady, in his opinion in adjudging the reformation asked for, " having left the paper (bill of lading) with the president, as stated, he (Meyer) had a right to rely upon defendants' officers making the indorsement in the proper form to secure the benefit of the application, as made, in the absence of any notice to the contrary. That the paper having been placed in the custody of the defendants, it was their duty to read the same, and if their omission to do so visits upon them unforeseen consequences, it is their fault, and not that of the plaintiff or her agent." The bill of lading, disclosing this particular shipment to have been of 18 (instead of

8) boxes of indigo, and that the voyage from La Union to Panama was "*via* Realejo," the intention of the parties to effect insurance upon it, in the manner and by the route described on the bill of lading, should prevail by the reformation of the contract in conformity thereto. The policy being thus reformed, the other issues came on to be tried before a jury, and a verdict was rendered for the plaintiff.

The points of objection against a recovery asserted by the answer, and sought to be maintained on the trial, were : 1st, that the vessel was unseaworthy on leaving La Union ; and, 2d, that by going into Golfo Dolce, an intermediate port, there was a departure from the voyage which released the insurers.

The question as to the seaworthiness of the vessel on leaving La Union was one of fact, fairly submitted to the jury on conflicting proofs, and their verdict ought not to be disturbed. Indeed, if the testimony of some of the crew on which defendants relied was to be credited, the loss of the vessel was imputable to barratry by the master, which was among the risks expressly assumed by the defendants. That the occasion of the vessel going into Golfo Dolce was in consequence of her leaking and unseaworthy condition, is, from the evidence, scarcely a matter of doubt ; but the question, whether she was so compelled to go into that port in distress, was also submitted, and the issue found against the defendants.

The judge was requested by defendants' counsel to charge the jury, that if, when the vessel left Golfo Dolce, she was not seaworthy, the warranty was broken, but he refused. He stated : "The point was a new one. All that the insured can be responsible for is the condition of the vessel at the time the voyage commences, and what occurs afterwards they cannot be answerable for "; that " the insured took the responsibility of the vessel being in a fit condition to carry the goods when the voyage commenced"; that " if it ran into port, and the vessel went to sea afterwards, by an improper exercise of judgment on the part of the captain, the owner of the property had nothing to do with that." The defendants' counsel excepted to this charge " to the effect that if the vessel was unseaworthy on leaving

La Union, and put into Golfo Dolce in an unseaworthy condition, and left there in an unseaworthy condition, the plaintiff was entitled to recover." As to this question of· unseaworthiness of the vessel on leaving Golfo Dolce, it would, perhaps, be sufficient answer, that no such issue was raised by the pleadings, nor any exemption from liability claimed on that ground; but aside from this, the charge in this respect was fully sustained by authority.

The law in every contract of marine insurance (without special provision to the contrary) raises an *implied* warranty, as well by the owner of the vessel, as of the cargo, of its seaworthiness at the commencement of the voyage; but this mere implication, predicated upon the requirements of good faith and honest dealings, may be obviated and destroyed by direct proof, of a full disclosure of such facts of unseaworthiness, as preclude the supposition of any such *understanding* between the parties,°or where the insurance is of a vessel at sea, where it is well understood the assured could not know her condition. The contract in this case was general against *barratry of the master and mariners, and all other losses or misfortunes that should occasion damage to the goods* on the voyage. The goods were lost by the sinking of the vessel at sea, and it would seem to be a most hypercritical and technical rule of construction that would exempt the insurers from any loss (not expressly excepted) occurring on the voyage, without fault of the assured, after the risk had attached (*Cullen* v. *Butler*, 5 M. & S. 461). If the vessel, crew, and equipments were sufficient at the commencement of the voyage, the assured fully complied with all her obligations, and she made no warranty that the vessel should continue seaworthy, or as to the future conduct of the managers of the vessel (1 Arn. on Ins. § 244, 5; 1 Phil. on Ins. § 733). In the case of an insurance by the owner of the *vessel*, a qualification may exist in the operation of any such general rule as to accidents happening during the voyage, arising from his own obligation to keep the vessel in suitable condition for the service in which it is engaged; for if, from bad faith or want of ordinary prudence and diligence, he fails to do so, and loss happens *from that cause*, he, and not the

underwriter, must bear the consequences (*Paddock* v. *Franklin Ins. Co.* 11 Pick. 227; *Starbuck* v. *N. E. Mar. Ins. Co.* 19 Id. 198; *Copeland* v. *Same,* 2 Met. 432; *Am. Ins. Co.* v. *Ogden,* 20 Wend. 287).

As a general rule, the law, for wise reasons, imposes on a party to a contract subjected to injury through its breach, the active duty of making reasonable exertions to render the injury as light as possible; and if, from neglect or wilfulness, he allows the injury to be unnecessarily enhanced, the increased loss must fall on himself (*Hamilton* v. *McPherson,* 28 N. Y. 72).

There has been much conflict of authority as to the extent of the liability of the insurer, to the owner of the vessel, for the acts or negligent conduct of the master or mariners; but if it rested upon him, in such a case as that under consideration, it is mainly to be determined by the special terms of the policy, or if it is silent, by the means he, or his agent, possess for making needed repairs, and maintaining the vessel in a fit condition for the voyage, and whether the negligence contributed to the loss (*Redman* v. *Wilson,* 14 M. & W. 476; *Waters* v. *Merchants' Ins. Co.* 11 Peters, 213). He was subject to no continued warranty of seaworthiness, nor to any obligation to make any repairs in the port of distress, beyond such as with reasonable diligence could be effected there.

But while such questions may exist, as between the owner of the vessel and the insurer, they in no way impair the right of the owner of the cargo. The master and mariner are not his servants, nor are his rights in any way affected by their misconduct or neglect of duty (*Redman* v. *Wilson, supra; Mathews* v. *Howard Ins. Co.* 11 N. Y. 9). Even as against the claim of the owner of the vessel lost at sea, through one of the risks insured against, the defense that the vessel had left an intermediate port in an unseaworthy condition, could only be sustained by the additional allegation and proof of neglect of facilities there afforded to make necessary repairs; but in a like action by the owner of the insured cargo, the neglect of the managers of the vessel to avail themselves of any such facilities for repair constitutes no defense. Under these considerations it is manifest, that even if there was a want of good judgment

or care on the part of the managers of the vessel in leaving Golfo Dolce in an unseaworthy condition, the rights of the plaintiff could in no way be impaired or affected, and the exception in any aspect of the case was unavailable.

The judgment should be affirmed.

Judgment affirmed.