J. A. BERRY, Appellant, v. UNITED COMMERCIAL TRAVELERS OF
AMERICA, Appellee.

INSURANCE: Accident Insurance—Exemption in re Hernia—Con-
1  struction. Recovery for loss of time resulting from a hernia,
*caused by an accidental fall,* may be had under an accident in-
demnity certificate providing: ''That payments . . . shall
not cover or extend to . . . any loss . . . as the result of,
or in consequence of hernia; nor to any . . . loss unless
caused by bodily injury which is external and accidental; and is
the proximate, sole and only cause of . . . loss.'' The ex-
emption here provided clearly refers to a *pre-existing* hernia.
(*Kelsey v. Casualty Co.,* 131 Iowa 207, overruled.)

INSURANCE: Accident Insurance—Proximate Cause. Proximate
2  cause is that which sets in motion a train of events which brings
about a result without the intervention of any force operating
or working actively from a new and independent source.

PRINCIPLE APPLIED: Plaintiff held an accident indemnity
certificate providing, (a) that disability or loss shall be one
caused by bodily injury which is external, violent and acci-
dental; (b) that the accident shall be the proximate, sole and
only cause of the disability or loss, and (c) the disability or loss
must not be in consequence of surgical treatment, except an opera-
tion made necessary by the particular injury. Plaintiff acci-
dentally fell. The fall caused a hernia. The hernia caused or ne-
cessitated a surgical operation. The surgical operation caused
disablement and consequent loss of time. To recover this loss
of time, plaintiff brought action. *Held,* the accident—the fall—
was the proximate cause of the disability and loss of time—the
hernia but a link in the chain of causation.

INSURANCE: Accident Insurance — Policy — Construction. Con-
3  struction is most strongly against the one who used the words.
So held in the construction of an accident indemnity certificate
containing an exemption from liability for loss, ''as the result
of, or in consequence of hernia'', ambiguity arising whether refer-
ence was to a *pre-existing* hernia, or to a hernia *caused by the
accident.*

*Appeal from Woodbury District Court.*—HON. GEORGE
JEPSON, Judge.

MONDAY, NOVEMBER 1, 1915.

A DEMURRER to plaintiff's petition was sustained, and, plaintiff having elected to stand on the ruling, the petition was dismissed. Plaintiff appeals.—*Reversed.*

*Sears & Snyder* and *J. A. Berry,* for appellant.

*Sargent, Strong & Struble,* for appellee.

LADD, J.—The error complained of is that of sustaining a demurrer to the petition. The latter alleged that plaintiff's assignor, one W. L. Hopkins, a traveling salesman, being a member of the defendant association in good standing, with all dues and assessments paid, on May 1, 1911, while walking along a street of Sioux City, "stepped on a piece of ice covered with snow, and, as a result thereof, slipped and fell heavily to the pavement, striking with full force on his back and hips, and as a result of said fall, the said W. L. Hopkins suffered a severe injury to the upper and front walls of his abdominal cavity. . . . As a result of said hernia caused by the fall aforesaid, and to obtain relief therefrom, the said W. L. Hopkins was compelled to undergo and have performed upon him a surgical operation to remedy and bring about a cure of his said injury. . . . Was confined to the hospital for several weeks immediately and continuously after the fall and injury and after leaving the hospital was confined continuously at his home for several weeks, and was immediately, wholly and continuously disabled and prevented from the prosecution of any and every kind of business pertaining to his occupation for a period of twelve weeks from and after the time of his said injury, and during said time, he was unable to follow his usual vocation as a traveling salesman or to perform any work or labor". It was also made to appear that defendant is a fraternal insurance association organized under the laws of Ohio, not for profit, but for social

1. INSURANCE: accident insurance: exemption *in re* hernia: construction.

and other purposes, including the establishment of a fund out of which to indemnify its members for loss of time on account of bodily injury effected through external violent and accidental means, which alone and independent of all other causes shall wholly and continuously disable and prevent members in good standing who have kept paid all fees and dues and assessments levied against them, "from the prosecution of any and every kind of business pertaining to his occupation".

The by-laws and constitution stipulated: "That payments authorized under the provisions of this section shall not cover or extend to any total disability or loss resulting from or in consequence of fighting, duelling, riding, or driving races . . . appendicitis, bodily infirmity or deformity, mental infirmity . . . nor any death, disability or loss resulting from or in consequence of. ivy poisoning or by poisoning or exposure to any poisonous growth or substance, nor from the bite or sting of an insect, ptomaine poisoning, *nor as the result of, or in consequence of hernia,* nor to any total disability or loss of which there is no external or visible mark of the accident on the body; nor to any death, disability or loss which results from, or in consequence of. any disease; nor to any death, disability or loss caused wholly or in part by bodily infirmity or disease; *nor to any death, disability or loss unless caused by bodily injury which is external and accidental; and is the proximate, sole and only cause of death; disability or loss;* nor as a result of or in consequence of medicinal treatment, mechanical treatment, surgical treatment, *except operation made necessary by the particular injury for which the claim is made, and the operation occurring within ninety days from the time of the accident."*

Due notice was given and proof of loss furnished, but payment refused. The assignment to plaintiff was alleged and he prayed for judgment in the sum of $300.

The demurrer sustained contained two grounds: (1) That plaintiff was seeking to recover for a loss which was the

result of and in consequence of hernia, though the defendant was exempted, by the conditions of the section quoted, from the payment thereof; and (2) that the accident was not the sole cause of the loss of time, independent of all others.

The ruling on the demurrer was on the theory that, though the injury was accidental, and cause of the hernia, no recovery could be had for that the loss of time was due to an operation rendered necessary in consequence of the hernia. In so ruling, the court admittedly was influenced against its own inclination by the opinion in *Kelsey v. Continental Casualty Company,* 131 Iowa 207. The exemption from liability there considered was ''from unnecessary exposure to danger or to obvious risk to injury from hernia, orchitis, fits, vertigo, somnambulism'', in which case but one tenth of the indemnity should be paid; and the court said, apparently without attention being called to the authorities: ''In our judgment this language is open to but one interpretation, and that is that, for loss of time, resulting wholly or in part from hernia accidentally produced, the amount which the company undertakes to pay is but one tenth of the indemnity or benefits which the insured would be entitled to receive for a like loss of time occasioned by injuries not enumerated as being within the exceptions or restrictions contained in said sixth clause of the policy.''

The opinion discloses that the main contention was with reference to the admissibility of oral evidence tending to show a waiver of the printed conditions of the policy. At any rate, a re-examination of 'the question leaves no doubt that the ruling is contrary to the accepted canons of construction which obtain in such cases, as well as to the great weight of authority and should be overruled. (See cases collected in 8 L. R. A. (N. S.) 1014.)

The primary purpose of this association was to furnish indemnity against the injury of its members for loss of time on account of bodily injury effected through external, violent and accidental means, and it is not questioned that the injury

of the insured was of this character. The loss of time was the proximate consequence of the accidental injury of his person, and the hernia merely secondary. The conditions of the section defining the exemptions plainly indicate what was intended; for therein it is provided: first, that disability shall be one "caused by bodily injury which is external, violent and accidental"; second, that the accident be the proximate, sole and only cause of the disability; and third, it must not have been in consequence of medical treatment "except an operation made necessary by the particular injury". Such was the injury to Hopkins, and the hernia a consequence thereof and not a cause. A single cause may produce, and ordinarily does produce, more than one effect; and in this case it may well be said that the accident produced two effects, i. e., hernia and disability. It does not follow that there were two proximate causes, however.

2. INSURANCE: accident insurance: proximate cause. Ordinarily, the direct and proximate cause is that which sets in motion a train of events which bring about a result without the intervention of any force operating or working actively from a new and independent source. Thus, a negligent act causes a nervous shock, and from the shock a physical injury results; but the proximate cause of the injury is the negligent act. The exemption clause contemplates hernia as the accidental cause of the disability; for the association is relieved of compensating for loss of time only when the injury is the result of or in consequence of hernia. This, of course, refers to the proximate consequence or result of the moving, active cause.

3. INSURANCE: accident insurance: policy: construction. The most that can be claimed is that the language of the exemption is ambiguous and susceptible of two constructions. Hernia may be caused by external violence or it may arise from internal causes; and if by the language it was intended only to exclude liability for death or disability caused directly or indirectly by hernia which might arise from internal causes, then the defense is liable. But if it was intended to

exempt the association from liability when the hernia was a consequence of external cause due to accident such as described in the policy, then it is not liable. The language of the policy is susceptible to either construction; and if so, as defendant prepared the contract, that most favorable to the insured must be adopted. Moreover, it would seem, in view of the object of the association, more reasonable that its purpose was to obviate liability for loss of time due to hernia having no sort of connection with or dependence on external violence or accidental means, but being of itself the proximate cause or one of the causes of the disability. Thus the loss of time might be due to disability caused by an accident plus hernia, which, in its origin, had no relation to the accident; and, if the loss resulted from both combined, then, under the conditions of the policy, there could be no recovery. But if the hernia is caused solely by the accident and is merely one of the links in the chain of causation, as in this case, it and the consequences thereof are the very disabilities for which the contract furnishes indemnity and such is the voice of authority. See *Miner v. Travelers' Insurance Company*, 2 Ohio N. P. 103. In *Travelers' Insurance Company v. Murray*, 16 Colo. 296, (25 Am. St. 267, 26 Pac. 774) in speaking of a similar provision contained in the policy, the court said:

"The hernia must be regarded as the result of the accident that caused the death; the cause of death; the force of the blow received; the consequent injury arising from the concussion, and the hernia as resulting. Deceased was insured against the accident by the terms of the body of the policy. Had he died of ordinary hernia, not produced by a serious and violent injury, appellant would probably have been released from payment; but when the hernia is the accidental result of the force of the blow, it cannot be regarded as excepted . . .

"The business of the company is to insure against accident. The object of the insured in making the contract was

to secure compensation and support in case of injury or disability arising from accident, and, in case of accidental death, to furnish a fund for the benefit.of the mother. The contract in the policy for and on which he paid the consideration was to pay the mother $1,500 'if death shall result . . . from bodily injuries effected during the term of this insurance through external, violent and accidental means'. 'That the contingency against which he insured did happen, and death ensued, is uncontradicted; that the bodily injuries resulting in death were received 'through external, violent and accidental means' was established beyond controversy. Such construction must be given to contracts of this kind as was evidently contemplated by the parties, and, while so construing them as to protect the insurer against fraud, deception and misrepresentation, give the insured the benefit of his contract and consideration for the premium paid." In *Freeman v. Mercantile Mutual Accident Association* (Mass.), 17 L. R. A. 753, the exemption provided that the benefits should not extend "to any case in which death or disability occurs in consequence of disease, or which may have been caused by any surgical operation, or medical or mechanical treatment, unless said operation or treatment shall have been undertaken for the relief of injuries which entitle the member to the benefits of this association, nor to any case except where the injury is the proximate cause of the disability or death".

The insured died of peritonitis and the evidence tended to show that it was induced by a fall and there was some evidence indicating that he had previously suffered from the disease. To the contentions of defendant that it was not liable even if the disease were caused by the accident, the court said:

"The principal question in the case is, 'What kind of cause is to be deemed "proximate", within the meaning of the policy?' Where different forces and conditions concur in producing a result, it is often difficult to determine which is

properly to be considered the cause, and in dealing with such cases the maxim, *causa proxima non remota spectatur,* is applied. But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily to be deemed the proximate cause. It means that the law will not go further back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient, predominant cause, which, following it no further than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect. An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so as well when death comes through the medium of a disease directly induced by the injury as when the injury immediately interrupts the vital processes."

And the court approved of the following instruction:

"Upon the question as to whether peritonitis, if that caused his death, is to be deemed a 'disease', within the meaning of this policy, and the proximate cause of death, within the meaning of this policy, so as to prevent a recovery, depends upon the question whether or not before the time of the fall, and at the time of the fall, he had then the disease, was then suffering with the disease. If he was, then, in the sense of the policy, although aggravated and made fatal by the fall, he cannot recover. But if, owing to existing lesion caused by that disease, but having not the disease at the time, the same kind of malady, that is, peritonitis, was started up, the company is to be answerable, although, if there had been a normal state of things, the fall would not have occasioned such a result."

In *Omberg v. U. S. Mutual Accident Association,* 101
Ky. 303 (72 Am. St. 413) the exemption was "from poisoning
in any form or manner or contact with poisonous substances".
The bite of an insect resulted in blood poisoning and the sub-
sequent death of the insured, and the court held that death
so caused was not the result of "poisoning in any form or
manner", saying:  "The blood poisoning was consequent on
the wound; the bite would, therefore, be the proximate cause
of death."

In *National Benefit Association v. Grauman* (Ind.), 7 N.
E. 233, the exemption was that the benefits of the certificate
should not extend to any case in which death or disability
should not occur in consequence of disease.   The assured sus-
tained bad injuries which were occasioned by two separate
falls which resulted in apoplexy and subsequently in death,
and "Though the fall and injury may have resulted in
apoplexy in consequence of which death ensued", it was held
that the averments effectually excluded the inference that
death resulted in consequence of disease within the terms of
the policy.

In *Atlanta Accident Association v. Alexander,* 104 Ga.
709 (42 L. R. A. 188), the exemption was from "Injuries or
death resulting from or caused directly or indirectly, wholly
or in part, by disease or bodily infirmity, hernia  .  .  .  rup-
ture", etc., and the court said:  "We think that where hernia
is produced by a sudden and accidental strain and the insured
shortly afterwards dies therefrom, the association is not ex-
empt under this clause.  Such a construction would make the
policy very misleading to the insured."

It would be, as was said by Willes, in the case of *Fitton
v. Accidental Death Insurance Co.,* 17 C. B. (N. S.) 122, "a
most illusory policy".  In *Thornton v. Travelers' Insurance
Company,* 116 Ga. 121 (94 Am. St. 99), the court had before
it a similar exemption.  The assured was afflicted with what
is known as a reducible hernia and wore a truss.  A sudden
lurch of the train on which he was riding threw him violently

to one side and the truss struck against the arm of one of the seats, the blow producing what is termed a "strangulated hernia". A surgical operation was necessarily performed and, as a consequence, the insured was totally disabled. It was contended that the loss of time in consequence thereof did not result from "a bodily injury inflicted through external violent and accidental means", but was directly or indirectly the result of the hernia previously existing. On the other hand, the insured contended that the hernia previously existing was not a proximate cause of the injury; that it would have resulted had he been sound and that the company was liable, for he was injured as the result of an accident within the meaning of the policy. The court held that the "true test to be applied, in order to determine whether there is a liability under the contract, is whether the condition of the insured in having, at the time of the accident, a reducible hernia contributed to the accident in whole or in part, directly or indirectly. If it did so contribute, the company would not be liable. But if the existence of the hernia in the system of the insured at the time of the accident did not substantially contribute wholly or partly, directly or indirectly, in bringing about the injury, but merely aggravated the consequences of the accident, then the plaintiff would be entitled to recover. If the insured had been a perfectly sound man at the date of the accident and it had resulted in producing a hernia, the company would be liable."

Judge Sanborn in *Western Commercial Travelers' Association v. Smith*, 56 U. S. App. 393 (85 Fed. 401), in considering a similar case, thus stated the principle:

"If the death was caused by bodily injuries effected by external, violent, and accidental means alone, the association was liable to pay the promised indemnity. If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental

means which produced the bodily injury, the association was equally liable to pay the indemnity.  In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the *causa causans,* to the accident alone.''

In *Summers v. Fidelity Mutual Aid Association,* 84 Mo. App. 605, on this subject, the court said:

''In accident insurance, where a person is insured against bodily injuries which are effected by external, violent and accidental means, and an accident produces the hernia causing death, the insurer will be liable.  For the insurance is against accidents and if hernia result from the accident, it will no more exempt the insurer than if it had not been named as a cause of exemption.''

We have discovered no well-considered case to the contrary.  An intermediate court in New York so decided without discussion or citation of authority.  *Sweeney v. National Relief Association,* 101 N. Y. Supp. 797; *Bacon v. U. S. Mutual Accident Association,* 123 N. Y. 304 (20 Am. St. 748), held that death resulted directly from disease.

In *Smith v. Accident Insurance Co.,* 5 Ex. 302, the exemption covered secondary causes arising within the system of the insured before or at the time or following such accidental injury and hence the case is not in point.

In *Keen v. Continental Casualty Company,* decided at the present term (April 7, 1916), the exemption was ''where accidental injury results in hernia''.  In *Fitton v. Accidental Death Insurance Company,* 17 C. B. (N. S.) 122, similar exemptions in a policy were construed and it was held that death through hernia caused solely and directly by external violence followed by a surgical operation performed for the purpose of relieving the patient was not within the exception.

It is unnecessary to direct attention to other decisions.

Enough has been said to vindicate our conclusion that the court erred in sustaining the demurrer and its ruling is—*Reversed.*

All the Justices concur.