CLYDE WHITE *v.* INTER-OCEAN CASUALTY COMPANY

(No. 8293)

Submitted February 25, 1936. Decided March 17, 1936.

*Bland & Joyce,* for plaintiff in error.

*R. H. Casto* and *C. C. Chambers,* for defendant in error.

KENNA, JUDGE:

Clyde White brought this action against the Inter-Ocean Casualty Company before a justice of the peace of Logan County. He recovered a judgment for $100.00, and upon appeal to the circuit court, he there recovered a judgment for $100.00 plus ten per cent damages from the date of the judgment before the justice of the peace. To the latter judgment, this writ of error is prosecuted.

Three defenses were interposed, namely, the general issue, a plea of accord and satisfaction, and a plea that, under the terms of the policy, the disability from which White was suffering was within an exception restricting his recovery to ten dollars a week for six weeks, which the company had already paid him.

The testimony of the plaintiff is that he was 28 years old and was last employed by the Merrill Coal Mines where he had worked from 1925 to the date of his disability. He became ill with pneumonia the first of April, 1934, and was treated by Dr. W. S. Gilmer. He remained in the hospital for nineteen days and was obliged to be away from work for 55 days. The latter part of May, he returned to work on the gathering motor in the mine, and remained at that employment until September 14th. On September 14th, he quit work until the 24th, when he returned for one day and was unable to work longer. He was under the observation and care of Dr. Gilmer at the time, and upon quitting work, was told by Dr. Gilmer that he was unable to work in the mines. He had not recovered at the time of trial. It appears from the evidence that the plaintiff, due to the pneumonia, had developed a heart ailment known as myocarditis. The defendant paid the plaintiff $60.00 for the six weeks next ensuing after September 14th. This action is to recover for disability during the period of time from November 1, 1934, to January 15, 1935.

The defense in the court below upon the merits is based upon the following language contained in the policy: "The limit of time for which indemnity shall be payable for disability due wholly or in part to tuberculosis, appendicitis, rheumatism, paralysis, cancer, sciatica, lumbago, dementia, insanity, hernia, in any form, any chronic or recurring disease, sprained, lame or wrenched back or any injury where there is no visible mark on the body, shall not exceed six weeks in any one policy year." The defendant contends that the plaintiff's claim grows out of and is based upon a "chronic or recurring disease," and, therefore, that his recovery under the policy is

limited to six weeks in the policy year, which had already been paid to the plaintiff. On the other hand, the plaintiff contends that his disability grew out of, and is based upon, his sickness from pneumonia, which is covered under the general terms of the policy entitling the plaintiff to recover for a total of 26 weeks, and that his disability goes back to the pneumonia for its cause, and does not stop at the myocarditis, which, under this proof, is itself admittedly a "chronic or recurring disease."

A cardinal rule of interpretation, when matters of doubt arise concerning insurance policies, is that the language of the policy is to be viewed favorably to the insured. It would seem quite clear that illness from pneumonia is one of the risks assumed by the insurer under the policy before us, for which the insured is entitled to 26 weeks indemnity at the rate of ten dollars a week, provided, of course, that the other conditions of the policy are met. If illness from pneumonia is one of the risks so covered by the policy, then it would seem plain that all of the direct results of pneumonia are insured against as fully as is disability from the disease itself. The circumstance that pneumonia directly resulted in a condition that could be described as another and different disease, we think, would make no difference. As long as it is a condition definitely attributable to the occurrence of the risk insured against, the fact that its severity may justify classifying it as an independent disease would not seem to be a determining factor. Here, the insured undoubtedly had pneumonia and the pneumonia undoubtedly caused the heart condition that compelled him to give up his work and remain under the care of a physician. We think that the following cases sustain recovery on the theory above discussed. *Jiroch* v. *Travelers' Ins. Co.*, 145 Mich. 375, 108 N. W. 728; *Moore* v. *Gen. Accident, etc., Corp.*, 158 N. C. 305, 73 S. E. 1002; *Berry* v. *United Commercial Travelers of America*, 172 Iowa 429, 154 N. W. 598, L. R. A. 1916-B, 617, Ann. Cas. 1918-A, 706; *Atlanta Accident Ass'n.* v. *Alexander*, 104 Ga. 709, 30 S. E. 939, 42 L. R. A. 188; *Conrad* v. *Interstate, etc., Ins. Co.*, 141 Tenn. 14, 206 S. W. 35.

The other defense in the court below was based upon a printed form of receipt found upon the back of a check for $60.00 paid to White for six weeks disability on the defendant's theory of the meaning of the policy. This receipt is as follows: "Received above balance being in full satisfaction, compromise and final settlement of all claims accrued or to accrue against Inter-Ocean Casualty Co., Cincinnati, Ohio, on account of any accident already sustained and any disease and any illness heretofore contracted." The defendant would hold the plaintiff strictly and literally to the language above quoted which was printed over the line he signed on to indorse the check he received. We are of the opinion, however, that the case of *Wade* v. *The Mutual Benefit Health & Accident Asso.*, 115 W. Va. 694, 177 S. E. 611, precludes this defense. See also *Moore* v. *Maryland Casualty Co.*, 150 N. C. 153, 63 S. E. 675, 24 L. R. A. (N. S.) 211. Before the receipt can be sustained as a contract, it must be shown that the agreement upon which it was based had the elements of a contract in it. It purports to release from claims that are to accrue in the future, and to be in full compromise of all past and future claims. The release does not appear to have resulted from a *bona fide* compromise. As a matter of fact, the $60.00 paid to the plaintiff by the check upon the back of which the receipt was printed over the line for his signature, was the amount that the defendant was obligated to pay to him as a minimum under the policy. It is not contended that the defendant was doing more than it was bound to do in paying White the $60.00. The check satisfied defendant's minimum and admitted liability to him. It cannot be contended that any part of it was consideration to White for the release of liability against the defendant which might arise in the future. It did not contain the elements of a contract in this respect, and therefore, does not constitute a bar to recovery for an obligation which arose against the company subsequent to the date of the check.

It may as well be plainly stated that this court does not look with favor upon releases in this form because

of the abuses to which they are so readily adaptable. The atmosphere of over-reaching, if not of coercion, seems to hover around them. They are placed above the space upon the back of the check that is ordinarily used for indorsements only, and where the unwary and the unlettered might easily place their signatures, or their marks with no, or little, attention to what is printed above. Their form is that of a mere receipt, but by the language used a full release is sought to be effected. Their purported legal effect is far beyond that which follows the mere indorsement of a check. The same act indorses the check and fully releases the insured's claim, past and future. The check is made in the amount of defendant's plain and admitted minimum liability to the insured, usually in an amount that furnishes a very strong temptation to the insured, injured and in need of funds. The insured is naturally impressed with the thought that he cannot obtain even a part of what is justly due him from the defendant without indorsing the check made to his order. He cannot use the check without signing the release as a part of his indorsement, and to refuse to do so results in protracted delay and possibly an expensive lawsuit at a time of acute need. All of this in circumstances where the check, but for the release printed as part of the indorsement, is tendered as the unqualified payment of an amount fairly due, and nothing more. But it most decidedly is something more. It is a studied means by which the fullest legal advantage is sought to be taken by a carefully advised insurance company of the necessities of a usually uninformed insured. In our opinion, courts should, where it is sought to avoid the effect of such a release, scrutinize the transaction with extreme care.

In consideration of the foregoing, the judgment of the Circuit Court of Logan County is affirmed.

*Affirmed.*